Isaiah v. JPMorgan Good morning, your honors, and I also have the receiver, Mr. Isaiah, here with me at council table. Your honors, in this case, the receiver is alleging that the defendant Chase aided and abetted a Ponzi scheme by knowingly permitting the fraudsters to use Chase deposit accounts to perpetrate the scheme. These claims we concede in the brief require a plausible inference that Chase actually knew that fraud was being committed and the receiver meets that burden here. This is not a case, like all of the cases cited in the bank's brief involving a bank, that merely should have known that something was amiss based on red flags that the bank either missed or disregarded. Mr. Friedman, I'll just tell you up front, my problem with the complaint is that under Twombly and Iqbal, it's nothing but conclusions and I don't know what they are. So, Judge As I understand this transaction, nothing in the complaint indicates it. The bank's obligation arises out of a contract with a depositor. Will you agree? Yes, your honor. Okay. So you take the four corners of the agreement between the bank and the depositor and then you import into that any rules of law by statute that the state requires in effect to be included in the agreement. Do you buy that? Yes, Judge. Is there any indication what the contract terms were in this complaint? None. That's true, Judge. You didn't attach anything and there's no citation of any statutory or regulatory provision that the law imposes that would be included in the contract. Do you agree with that? I agree with that, Judge, although the complaint is premised on common law claims. Whatever the case may be, the rule, it may be common law, but the common law is the contract between the bank and the depositor. Sure, Judge, but the bank can't contract around the common law duty. I understand that. I understand that. So you take the contract and you bring the rules that apply to the contract into play and you haven't cited one. Your honor, again. Can you tell me where in the complaint you cite one?  Any rule, first of all, you don't cite the contract. All you say is they deposited money. Correct, Judge. So we don't know the parameters of the contract. I don't dispute anything you're saying, Judge, but assuming, you know, carrying out the point of argument that you're making, the line of argument that you're making, if the contract said that the deposit holder cannot hold the bank accountable or liable for aiding and abetting an intentional tort, there's case law, and this isn't briefed, so I don't have that case law at my fingertips, but there is case law that says you can't contract around the common law duty not to aid and abet an intentional tort. So irrespective of any contract terms, the bank did have a duty to not knowingly aid and abet. The duty that the bank had, would you agree, stemmed from the contract? I agree the duty stems from the contract. So we have to know, wait a minute, we have to know what the contract is. Do you agree with that? I do not agree with that, Judge, no, because... So in other words, the duty stems from a contract, but we don't need to know what the contract was. The bank's duty to not aid and abet an intentional tort does not stem from any contract. I understand that's a principle of tort law, but whatever duty the bank had arose out of its contractual relationship with the depositor. I disagree with that, Judge. I disagree with respect to the... I just wanted you to know where I was. And I appreciate that, Judge. I won't say another word. No, no, I appreciate that very much, obviously, Judge. But again, I think irrespective of any contract terms, the bank had a common law duty not to aid and abet an intentional tort. Can I ask you, I mean, it seems to me that this case turns on whether the bank had actual knowledge. Would you agree with that? Yes, yes, Judge. Okay, and so what are the allegations that you rely on to show that the bank had actual knowledge of this Ponzi scheme? So the key allegations in our complaint, Judge, are that sort of setting aside the atypical account activity, which we allege in some detail in the complaint, building on top of generated documents associating the accounts with fraud. But can I ask you something about that? So the bank freezes the accounts because it says that there's suspected fraud, right? Correct, Judge. Okay, but does it say what kind of fraud it is or any information? I mean, could it be fraud on the account? That is, fraud on the victims, fraud on the... Looking at the owners of the account as the victims, I mean, is there any indication there as to what they thought that fraud was? It's possible, right? I would concede it's possible that that's what the bank was thinking. It's also plausible that the bank had identified fraud on the account, fraud being perpetrated with the account, and then determined for reasons unknown to anyone really other than Chase decided to open new accounts, let the account holders move their money into those accounts and continue transacting business for another two months. Now, because we... And we know that circumstance, we know that scenario is plausible because we've seen it happen. And this court in the Perlman v. Wells Fargo decision said, yeah, those facts which that court had before, which essentially mirror the facts that this court has before it now, state plausible aiding and abetting claims. Because if the bank realized because of its internal account monitoring systems, its anti-money laundering system, its fraud investigative systems, if the bank comes to realize that a Ponzi scheme is being perpetrated through the bank's accounts, at that point, the bank has sufficient knowledge to be held liable as an aider and abetter and can be held liable on those claims if it continues to allow the accounts to be used for that purpose. And again, those were exactly the facts in the Wells Fargo, the Perlman v. Wells Fargo case, which we discussed extensively in our brief. The only real differences between the facts in this case, the circumstances in this case and the circumstances in Wells Fargo, is that the receiver was permitted to engage in discovery in the Wells Fargo case. The receiver engaged in discovery, was able to obtain the bank's internal investigative records, anti-money laundering records, which showed what the bank was thinking when it froze the accounts, which showed that the bank realized what was going on in the accounts and why it made the decision to freeze them. The receiver in that case also deposed a bank fraud investigator who testified that she immediately recognized the account activity, which is the same account activity that we allege in detail in our complaint. She immediately recognized that account activity as being indicative that the accounts were being used for fraud. She testified that it was the type of activity that would make the hair on the back of a fraud investigator's neck stand up. In this case, the bank thwarted that discovery. In this case, the receiver tried to get those same account records, the investigative records, which show exactly what the bank knew and exactly when it gained that knowledge, and the bank convinced the state court presiding over the receivership that because this federal case was pending, it should hold off and not allow the receiver to have that discovery in the state court. The bank then convinced the district court in this case to stay that discovery pending ruling on the motion to dismiss, which of course is extremely unfair because the bank obtained dismissal based on lack of allegations concerning actual knowledge when at the same time it was stifling the discovery that it successfully stonewalled dealt with exactly that issue. The bank has never disputed, I don't believe the bank could in good faith dispute, that it has at its fingertips documents that will tell us, that will tell the court, that will tell the bank exactly when it gained that knowledge. What was the bank thinking when it froze the accounts? What was the bank thinking when it decided to unfreeze the accounts? It's safe to assume the bank is not hiding those documents because they would exonerate the bank, right? It's resisted that discovery presumably because it would be bad for the bank's case. By the way, the bank's never really offered any legitimate reason why it can't produce those documents under the sort of general vagary that it would likely be burdensome to produce the documents, it would likely entail great costs. There's never been any affidavits applied or any actual proof or specificity proffered to support the suggestion that it would be burdensome for the bank to produce those documents. We're not talking about documents like all communications or all emails. These are not the types of documents that get lost in lower level bank employee desk drawers. These are significant, important documents that the bank generates that, again, presumably and in my experience, the bank has available at its fingertips. Did your client offer to pay for the production of these documents in response to the response that it was overly burdensome and costly? I'm not sure it really makes a difference, but if they did, that might be something. I don't believe there's anything in the record to that point. I can tell you that outside of the record, to my knowledge, the bank asked for an exorbitant fee to produce documents which presents real practical hurdles for a state court appointed receiver that has no money, other than the money generated from litigation recoveries. I don't think, again, speaking anecdotally outside of the record, I don't think that would have moved the needle because, frankly, these are documents that the bank doesn't want the receiver to see. Suppose the bank never put a hold on the account or never said, you're not banking here anymore. Create a hypothetical. Very good. The bank says to the customer, our contractual relationship is over. Let's suppose that the customer is running a Ponzi scheme. The mere fact that the bank closed the account gives rise to a common law of investigation that you're arguing about. I want to make sure I understand your hypothetical, Judge. I'll make it plain. The bank simply cancels the account, ends the account. It invokes a term in the contractual relationship which allows it to discontinue the relationship, to terminate the relationship. That's all it does. And you have evidence that it's a Ponzi scheme. You got a case against the bank? I would say, if all the receiver alleges is there was a Ponzi scheme. No, do you have a case against the bank? Again, and I just want to make sure I understand your hypothetical. There's an allegation that the bank, you allege this, that the bank closed the account because of suspected criminal activity, that deposits were proceeds of criminal activity. That's what you allege? Correct, Judge. All the bank did was close the account. Without then reopening the account and allowing the ... It just plain closed the account. I would say, Judge, no. No. I would say there is no aiding and abetting claim because you're missing the crucial piece of ... And the depositor takes its money, which is what it did later on. It took its money. It put it back in the bank and then took it again. It put it ... Wait a minute. It took it again. They close the account and they, without saying a word, they just close it and they happen to open it again a week later and then it's emptied. You got a case under the common law? If the bank closed the account because it ... If they closed the account, they simply ... Account was reopened and then emptied, which is the case here. The critical facts, which I think distinguish our case from the hypothetical you're describing, are that the bank continued the relationship despite realizing that the ... What's your best case? I don't understand your question, Judge. I apologize. You got a ... Your best case for that proposition? The Perlman versus Wells Fargo case supports that. If the bank continues to process ... That's what your argument is. Your argument is the bank, as a matter of tort law, we're going to stick with the hypothetical. Bank closes the account. No announcement from the fraud section of the bank, no announcement, just closes it. A new account is established, take the money out. The fact that they established a new account and the money was taken out creates the common law tort? Knowledge is what creates the common law tort. If I don't have an ... I apologize. The knowledge was that the fraud section said, we're closing the account, it's suspicious. They don't say a word, they just close it. Sure. Yes, Judge. Okay, we write an opinion henceforth that banks should never, ever, if they suspect criminal activity, say a word to anybody. They just close the account. They do that so that they can avoid a lawsuit. It's not the bank, and I know my time is up, so I'm just trying to answer this. Oh, you're on my nickel. Okay, thanks, Judge. Thanks, Judge. It's not the bank saying a word or not. It's what did the bank know? So if the ... I understand it. Well, you'd just be ... You'd sue the bank. You'd sue the bank and you'd say, you should have known all these things. I would never allege that you should have known, because I would consider ... Well, all right, then you knew. So file a suit, the bank closes the account, money's gone, Ponzi people got the money. You file a lawsuit, then you get into discovery to find out why the bank did that. I think there you do have a pleading issue, because if I don't have some good faith basis for alleging that the bank knew, then I can't plead that they knew, right? Yeah, no. Rule 11 would tell you you can't do that. And as a matter of pleading, you can do that. The law would say you could not sue the bank. All the bank did was close it. But we write an opinion which says if the bank simply just closed the account, not said a word, they can't be liable. Well, I think, again, trying to go down this ... Under a theory that they got in bed with the Ponzi dealer. Right. And there are potentially other avenues of discovery. Again, as a general matter in a receivership case, a receiver is able to investigate these issues pre-suit and is able to formulate a good faith basis one way or the other pre-suit as to what the bank knew. That was attempted to be done here, but it was stifled by the bank because the federal case had already been filed. What damages do you want? The damage ... Hypothetical. You sue the bank, the bank closed the account. Over the years, there have been $10 million squirreled away by the Ponzi people. Are you getting the whole 10? The damages would be measured by transactions that occurred after the bank gained knowledge that it was aiding and abetting this deal. Oh, the bank never had ... How do you ... All the bank knew is what came in and what went out. That's all the bank knew. Right. So if that's all the bank knows, then that bank's not liable on an aiding and abetting theory. Right? All I'm saying is, we write an opinion and say, banks don't ever say a word. Don't call the FBI. Well, Judge ... Oh, that would be bad, wouldn't it? That would be bad, but ... Aren't they required by law to call the FBI if there's suspicious activity? Banks have obligations under federal law to report these things to the ... Well, citizens have an obligation under the common law to report crime. Federally insured banks have an obligation under federal statute in the Bank Secrecy Act to report those types of things to the federal authorities. So, and I hope that answered your question, Judge. I feel like I was kind of tripping over myself trying to follow you there, but ... I'm just trying to get to the consequences of your point. I appreciate that, Judge. I think that, again, the requirement of actual knowledge protects against what I sense is the slippery slope argument that you're identifying. Right? If the bank, if ... And I know I'm over my time. Oh, that's all right. If the plaintiff, generally court-appointed fiduciaries, bankruptcy trustees, receivers, right, does not have some good faith basis for ... Either based on what the bank said, as you identified, Judge, or based on pre-suit discovery, investigative discovery. If the fiduciary, the receiver in this case, doesn't have some good faith basis for alleging that the bank actually ... Well, you're standing in the shoes of the Ponzi dealer. Of the Ponzi entity. Right. You are Ponzi himself. Well, I'm the entity that the Ponzi ... No, you're subject to everything Ponzi is. You agree? Well, there's law to the contrary on that, Judge, in the 11th Circuit, actually. You're not standing ... You're in better shoes than Ponzi? I'm standing in the shoes of the entity that ... And I don't know if there was an entity. I understand. And the point is, the point is, you're alleging that the bank colluded with you in criminal activity. Colluded with the Ponzi schemer in criminal activity. Ponzi brings the lawsuit and hires a receiver to bring the lawsuit. Wait a minute, wait a minute. Sure. If Ponzi brought the lawsuit, it's a laugher. The court throws it out. I would concede with that, Judge, yes. Okay. What Ponzi does is he does another Ponzi. He hires a receiver, and the receiver brings the lawsuit, and he isn't tarred with any of Ponzi's brush. I'm not sure that that would work, but I think that's distinctly open to facts. That's where you are. You're Ponzi bringing the lawsuit against the bank. I'm a court-appointed receiver bringing the lawsuit against the bank. That's fine. We'll go get a judge to appoint you. You're immunized. Right. And there's a bunch of law to that effect, Judge. You know, we have thousands of cases involving the FDIC taking over banks and such, don't we? That's true. Well, thousands, I don't know. Do they stand in the shoes of the bank that went under? That's my understanding, Judge, yes. They do. They don't get a better position, do they? That's my understanding. So what we do is we invent a rule which says if some judge appoints a receiver for Ponzi, the receiver has got a gold mine. Well, Judge, you know, there are practical policy considerations that support the law that says that, yes. I mean, for example, the receiver here is acting for the benefit of various defrauded creditors and investors, and so for policy considerations, yes, courts do set aside the We'll give you a little rebuttal time. OK, thanks, Judge. And thank you so much for the extra time. Ms. Heston? Good morning, and may it please the Court, Nellie Heston for JPMorgan Chase Bank. Don't take my interchanges with your colleague to your favor. I promise not to, Your Honor. I'm fully prepared for you to have this. Sometimes it's just a straw argument. Sure, Your Honor. I'm prepared for you to have the same colloquy. It is an interesting point, though, isn't it? Well, Your Honor, I mean, really, whether he stands in better shoes than Ponzi. It is, Your Honor, and I think the case law that the receiver cites about that actually speaks more to situations where the receiver is trying to claw back transfers to third parties, investors who are better off. And so I think the receiver and the bank have some dispute as to exactly what the receiver is entitled to do in these circumstances. But I agree. Yes, Your Honor. So your colleague says that the allegations that the bank detected fraud in those two accounts are sufficient in view of the fact that it's not allowed to have discovery yet to establish the plausibility of its claim. Did you want to respond to that? Why is it not plausible? Yes, Your Honor. I'll respond to that in two ways. First of all, the receiver doesn't have a lower bar for crossing the threshold of a motion to dismiss before unlocking the doors to discovery than any other litigant does. I don't think he's making that argument. But the question is, why is it not plausible to take from that allegation that the bank had knowledge that there was a Ponzi scheme, and then when it opened the new account on behalf of these same wrongdoers, I guess, that it had knowledge that it was somehow assisting in this scheme? So I think Your Honor hit the nail on the head earlier that the deposit slips or the withdrawal slips that the receiver is relying on say, fraud, transfer to new account, and the other one says fraud on account, transfer to new account. And so the purported detection of fraud could have been fraud on the account holder, consistent with the language on that withdrawal slip. So your position is that it's just as likely, it's at least just as likely that the bank believed that there was fraud on the account owners as it is that the bank believed that the account owners were committing a fraud? Certainly, that's the case, Your Honor. And the complaint is silent on any contextualization of what those statements mean on the withdrawal slips. And I'd actually point the court to Lawrence, in which the court found that allegations that a banker spoke positively about the schemer and the schemer's accounts was less likely to show that the bank knew about the scheme and was in fact more likely to show that the bank was an innocent participant. Can I ask you another question? Yes, Your Honor. You know, it seems to me like it's not completely impossible if we were to agree that there wasn't enough in this particular iteration of the complaint. It seems to me that it's not completely impossible that the plaintiffs would be able to come up with enough to survive a motion to dismiss. And the district court denied permission to amend. So what is your best argument for why that was a correct decision? So the district, the receiver didn't seek leave to amend in the district court and certainly didn't put before the district court any additional facts that the receiver would be able to plead. And actual knowledge is a high bar. The court requires a strong inference of actual knowledge. On the other hand, even though there might not have been a specific motion in that particular case, the plaintiffs were responding to a motion to dismiss and probably didn't expect on the first motion to dismiss that it would be dismissed with prejudice. Be that as it may, Your Honor, the receiver has given no indication that there are any additional allegations the receiver can come forward with. And I'd actually like to return to Pearl Mabee Wells Fargo. I'm sorry. Before you get there. Yes, Your Honor. Let's just assume for purposes of this argument that the receiver had some other allegations that it might be able to come forward with. Is there some reason why they shouldn't be allowed at least one opportunity to try to amend the complaint? No, Your Honor. Other than the fact that the receiver hasn't actually asked for it, attempted to do it, and there's no indication that the receiver has anything else. But in fairness, it was dismissed before they really had an opportunity to do so, right? I mean, the motion to dismiss was granted on your motion. And in that order, it was dismissed with prejudice, right? Yes, Your Honor. That's accurate. But I do think it's helpful to go back to Pearl Mabee Wells Fargo, which is the case that the receiver wanted to analogize to. Because in Pearl Mabee Wells Fargo, this court had before it two complaints. An original complaint that alleged typical red flags, atypical transactions, that sort of thing, and also alleged that the bank froze the accounts and then unfroze them. And this court said that's not enough to show actual knowledge. And that's very similar to the circumstances that are alleged here. It's the amended complaint in Pearl Mabee Wells Fargo that this court allowed to move past the motion to dismiss stage. Because that complaint alleged things like names of bankers and the particular knowledge that they had that there was, in fact, a scheme afoot. And we don't have any of that here. I do want to touch on something Your Honor asked at the beginning of the argument, though, which is whether this case revolves around actual knowledge. And while I think that's the case for the aiding and abetting claims, that is not the case for the fraudulent transfer claims that are also on appeal. The fraudulent transfer claims that the receiver alleges do not get out of the gate because the receiver hasn't alleged a transfer, which is an essential element of the receiver's affirmative case. And so while the receiver has collapsed that into mere conduit analysis, which would be an affirmative defense Chase might avail itself of, the transfer element itself shouldn't be brushed by and doesn't have anything to do with what knowledge Chase did or didn't have. And the district court's dismissal of the fraudulent transfer claim, based on the absence of a transfer, is consistent with the statutory language within FFTA. It's consistent with this court's decision in We and V. Wells Fargo. It's consistent with a line of cases in this circuit in the bankruptcy context. And it's also consistent with every other court of appeals to have reached the issue, finding that where a debtor transfers or moves money in and amongst his or her own unrestricted accounts that no transfer has occurred for purposes of fraudulent transfer. The bank never had the money. In those cases, the bank never had the money. It's not transferred. It doesn't have something in it that's fraudulently transferring it. Yes, Your Honor. And this complaint alleges that Ponzi transferred the money. Yes, Your Honor. Not the bank. That Ponzi transferred the money. Yes, Your Honor. I would say that Ponzi moved the money. Ponzi moved the money. There's no transfer for purposes of fraudulent transfer. But Ponzi did the moving. Yes, Your Honor. Exactly. And that's why the district court As a matter of fact, the bank couldn't prevent Ponzi from moving it, could it? That's accurate, Your Honor. Do you agree that the contractual relationship is what sets the bank's obligations in motion? I do, Your Honor. And here, the only allegations is that these are unrestricted, ordinary deposit bank cases. We don't know. They never allege the kind of arrangement Ponzi had with the bank. Well, they certainly don't allege that it was We know there was a bank account. Yes, Your Honor. The parameters, any conditions on the account, we don't know, do we? It's certainly the case that the receiver did not allege that there were any conditions on these accounts. That's correct. And that's why the district court properly found that there were no transfers here, the first element of the fraudulent transfer claim, before even reaching whether Chase was a transferee or whether it could avail itself of mere conduit. To do that, the bank had to make an assumption about the contractual relationship. To do what, Your Honor? I'm not sure I follow. I'm not sure that I followed Your Honor's question. The court had to assume what the contract between the Ponzi and the bank provided in order to describe the transfer. Well, Your Honor, I think that the court drew the plausible inference from the complaint that there were no restrictions. I agree with the inference. That there were no restrictions on the accounts. Yes, Your Honor. So I agree that first there has to be established a transfer for the FAFTA claims, but with respect to the other three, you would agree, with respect to the common law claims, you would agree that knowledge is, that actual knowledge is really the key issue. Yes, Your Honor, I would agree that that is the key issue and that the district court properly found that this complaint asserts typical red flags, suspicious activity, perhaps suspicions of fraud or as the district court put it, knowledge or awareness of symptoms, symptoms of a Ponzi scheme, didn't have actual knowledge. Let's suppose the bank had actual knowledge at some point in time. At the time that it canceled the account, it had actual knowledge as it was a Ponzi scheme. All right, Your Honor. It closes the account. Yes, Your Honor. Any liability? No, Your Honor, I think in that circumstance, the bank has done exactly what we would want the bank to do. Well, all that happened here was that they took the money that they were entitled to have, even though it was criminal proceeds, put it back in the bank and took it out again. Yes, Your Honor, and there's no plausible allegation that the bank had actual knowledge at that point. Well, even if they had actual knowledge, it would be the same loss. Yes, Your Honor, yes. They walked out of one branch and put the money in another branch and took it back out again. It's the same loss. Yes, Your Honor, I agree. Ponzi took the money in both instances. Yes, Your Honor, I agree with that. I agree with that. But if they had actual knowledge and the bank closed the account because of the actual knowledge and then the bank having actual knowledge that this was a Ponzi scheme allowed the account to be opened again and the new account to be used to further the Ponzi scheme in any way, then you would agree that that would be a problem if the bank had actual knowledge. I think then, Your Honor, we would be talking about whether what the bank did rose to the level of substantial assistance. Then we'd have the problem of how do we determine damages. Well, first we'd have to establish that the bank knew of the specific underlying tort and substantially assisted it. And here we haven't even crossed that first threshold of actual knowledge. But the damage to Ponzi would already have occurred. Your Honor. What I'm saying is the bank closes the account with actual knowledge. A million dollars goes back to Ponzi. Yes, Your Honor. Okay. Ponzi puts it back in another branch of the bank two weeks later then takes it all out again. Ponzi got all the money. Yes, Your Honor. I'm having a hard time finding out how in the world you would calculate any damages, tort action damages, against the bank. I agree with Your Honor. The schemer still has the same million dollars. Same million dollars? Yes, Your Honor. I agree with Your Honor in that hypothetical. If the court has no further questions, we would just ask that the court affirm dismissal. Okay. Okay. Mr. Friedman, you have a little bit of time.  Thank you, Judge. Can I ask you to address two things, please? Certainly, Judge. They're not exactly related. The first thing would be if you could address your colleague's argument that the idea that there was no actual knowledge is at least as possible as the idea that there was actual knowledge. Just one second. Sure. Under Twombly and Iqbal, when you have two equally possible alternatives, you have an established plausibility. The second question, which is unrelated, is what is your position about possible amendment? I think, Judge, if two possibilities are each at least as possible, then the court's duty is to infer the complaint and make the inference that favors the plaintiff. Here, it seems as though the case went the other way. The district judge, in very telling language, said, well, the bank had knowledge of symptoms of a Ponzi scheme. To me, that's enough. How could a plaintiff with secondhand knowledge ever allege more than the symptoms of knowledge? That's every knowledge case ever is allegations and evidence of symptoms of knowledge. So I think if each possibility, to answer your question directly again, is equally possible, then the plaintiff wins. The tie goes to the plaintiff. Do you think that each possibility is equally possible? And if not, then why? I think either the bank made a mistake, perhaps was negligent, identified a problem with the account, fraud with the account, and either opened the account anyway because somebody was asleep at the wheel, or somebody in the bank pulled a lever and decided to continue allowing the fraud to be perpetrated through the account. I would say it's one of those two things, Judge, in my view. Or somebody in the bank investigated, as far as they could tell, there's no illegal activity. I would put that in the first category, right, because there was illegal activity, and there's no dispute as to that. So if the bank investigated and came to that conclusion, it made a mistake, not liable on an actual knowledge-aiding and abetting standard. Or it's the other possibility in which we stay to claim and proceed. Judge, given the opportunity to amend, what I would say is, we need the discovery in order to know what the bank knows. Chase knows what it knows. In order to allege knowledge, we need the discovery. And to answer, Judge Schoflat, your question about the contract directly, I'm told by the receiver, who was whispering in my ear, that we requested the contract, but the bank failed and refused to produce it in connection with the discovery stay. And I'm out of time unless the Court has any other questions. We have your case. We'll be in recess until 9 in the morning. All rise.